1  CAROLINE L. FOWLER,  City Attorney (SBN 110313)
   JOHN J. FRITSCH, Assistant City Attorney (SBN 172182)
2  City of Santa Rosa
   100 Santa Rosa Avenue, Room 8
3  Santa Rosa, California 95404
   jfritsch@srcity.org
4  Telephone:  (707) 543-3040
   Facsimile:   (707) 543-3055
5
   Attorneys for Defendants
6  CITY OF SANTA ROSA; ED FLINT, an individual and former Chief of the
   SANTA ROSA POLICE DEPARTMENT; SRPD Sgt. RICHARD CELLI,
7  SRPD Officers RYAN HEPP, BRENT JOLIFF, TIMOTHY GILLETTE,
   ADRIA COOPER and MARLEE WELLINGTON
8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12  ALBERT THOMAS RUIZ III,                Case No. CV 09-3952 VRW

13            Plaintiff,                    **DEFENDANTS' NOTICE  OF
                                            MOTION AND MOTION FOR
14      v.                                  SUMMARY JUDGMENT;
                                            MEMORANDUM OF POINTS AND
15  CITY OF SANTA ROSA, former SRPD         AUTHORITIES IN SUPPORT OF
    Chief ED FLINT, SRPD Officer RYAN       MOTION FOR SUMMARY
16  HEPP, SRPD Sgt. RICHARD CELLI,          JUDGMENT**
    Officers BRENT JOLIFF, TIMOTHY          **[FRCP 56]**
17  GILLETTE, ADRIA COOPER, MARLEE
    WELLINGTON, and DOES 1 to 5,            [DEMAND FOR JURY TRIAL]
18  inclusive,
                                            Date:      June 17, 2010
19            Defendants.                   Time:      10:00 a.m.
    _____/      Ctrm:      6
20                                          Judge:     The Honorable Vaughan
                                                       Walker
21
                                            Trial Date:  None
22

23

24

25

26

27

28

1

TABLE OF CONTENTS

2

Page

3  MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4  STATEMENT OF PLEADINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6  LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7        Legal Standard for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8  ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

9        A.   OFFICER HEPP'S USE OF FORCE WAS OBJECTIVELY REASONABLE
             AND CONSISTENT WITH PROPER POLICE PROCEDURE . . . . . . . . . . . 9

10

11       B.   IF THE COURT CONCLUDES THAT A CONSTITUTIONAL VIOLATION
             OCCURRED, OFFICER HEPP IS ENTITLED TO APPLICATION OF
             QUALIFIED IMMUNITY AND DISMISSAL OF THE COMPLAINT . . . . 11

12

13            1.   City Did Not Maintain a Policy, Custom or Practice, or Ratify or
                  Condone Violative Conduct, Encouraging Excessive Force . . . . . . 12

14            2.   Neither CITY nor Officer HEPP violated the Bane Act . . . . . . . . . 13

15            3.   Officer HEPP Did Not Commit Common Law Battery . . . . . . . . . . 13

16            4.   There is no Triable Issue of Fact Material to Plaintiff's Violation of
                  the Convention Against Torture Count . . . . . . . . . . . . . . . . . . . . . . 14

17

18  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page(s)

3

<u>Federal Cases</u>

4

*Adickes v. S .H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 5098,
    26 L.Ed.2d 142 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5

*Al-Saher v. I.N.S.,* 268 F.3d 1143 (9th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505,
    91 L.Ed.2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

7

*Blue Ridge Insurance Co. v. Stanewich,* 142 F.3d 1145 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . 8

8

*Boyd v. Benton County*, 374 F.3d 773 (9th Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

9

*British Airways Board v. Boeing Co.,* 585 F.2d 946 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . 8

10

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) . . . . . . . . . . . . . . . . . . . 7

11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596, 113 S.Ct. 2786,
    125 L.Ed.2d 469 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

12

*Graham v. Conner*, 490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

13

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) . . . . . . . . . 12

14

*Kamalthas v. I.N.S.,* 251 F.3d 1279 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

15

*KRL v. Estate of Moore*, 512 F.3d 1184 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

16

*Long v. County of Los Angeles,* 442 F.3d. 1178 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . 7

17

*Lynn v. Sheet Metal Workers Int'l Ass'n,* 804 F.2d 1472 (9th Cir. 1986) . . . . . . . . . . . . . . . . 8

18

*Malley v. Briggs,* 475 U.S. 335 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

19

*Martinez v. City of Los Angeles,* 141 F.3d 1373 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 7

20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) . . . . . . . . . . . . . . . . 8

21

*Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) . . . . . . . . . . 12

22

*Monell v. New York Department of Social Services,* 436 U.S. 658 (1978) . . . . . . . . . . . . . . . 2

23

*Nadell v. Las Vegas Metro. Police Dep't* 268 F.3d 924 (9th Cir. 2001) . . . . . . . . . . . . . . . . . 12

24

*Pearson v. Callanan*, –U.S.–, 129 S. Ct. 808 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25

*S.E.C. v. Seaboard Corp.*, 677 F.2d 1301 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

26

*Saucier v. Katz,* 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) . . . . . . . . . . . . 11

27

28

1   *Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

2   *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3   *Toscano v. Profe'l Golfers Ass'n* 258 F3d 978 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

4   *Van Ort v. Estate of Stanewich*, 92 F.3d 831 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5   *Wilson v. Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) . . . . . . . . . . . 11

6   <u>State Cases</u>

7   *Brown v. Ransweiler* (2009) 171 Cal.App.4th 516 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

8   <u>Federal Statutes, Rules and Regulations</u>

9   Federal Rule of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 8

10   42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

11   8 C.F.R. 208.18(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

12   <u>State Statutes</u>

13   California Civil Code § 52.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

14   California Penal Code § 148(a)1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15   California Penal Code § 3056 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

16   California Penal Code § 594(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

17   California Penal Code § 647(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18

19

20

21

22

23

24

25

26

27

28

1    TO PLAINTIFF ALBERT THOMAS RUIZ III AND HIS ATTORNEY OF RECORD:

2          Please take notice that on June 17, 2010 at 10:00 a.m. or as soon thereafter as the

3    matter may be heard in the above-entitled court, located at 450 Golden Gate Avenue,

4    Courtroom 6, 17th Floor, San Francisco, California, 94102, the defendants, jointly and

5    severally, will move the court for summary judgment pursuant to Federal Rule of Civil

6    Procedure 56 in their favor against plaintiff on the grounds that defendants Officer

7    RYAN M. HEPP and CITY OF SANTA ROSA did not violate the constitutional rights of

8    ALBERT THOMAS RUIZ III, and/or is entitled to qualified immunity, and/or is not

9    subject to municipal liability.

10         This motion is based on this notice, the memorandum of points and authorities

11   filed herewith, the Declarations of John J. Fritsch, Officer RYAN M. HEPP, and Joseph

12   Callanan, Jr. and exhibits attached thereto, and  the pleadings and papers filed herein.

13
                                         OFFICE OF THE CITY ATTORNEY
14

15                                              /s/
     Dated: May 5, 2010          _____
16                                       John J. Fritsch
                                         Assistant City Attorney
17                                       Attorney for Defendants
                                         CITY OF SANTA ROSA; SRPD Officer RYAN
18                                       HEPP

19

20                     **MEMORANDUM OF POINTS AND AUTHORITIES**

21         Defendant Santa Rosa Police Department Officer RYAN M. HEPP (HEPP), and

22   the CITY OF SANTA ROSA (CITY) respectfully submit this Memorandum in support of

23   Motion for Summary Judgment.

24                             **STATEMENT OF PLEADINGS**

25         Plaintiff RUIZ alleges via Judicial Council form complaint in the Superior Court

26   of California that Sgt. Celli "employed his taser excessively and unnecessarily"; that

27   Officer HEPP "punched Plaintiff 4 or 5 times in the face"; that Sgt. Celli, former Chief

28   Ed Flint and other named Defendant Officers "conspired together to beat Plaintiff  in

1   violation of 42 U.S.C. §1983, common law battery, California Civil Code § 52.1 and the

2   Convention against Torture; that the individuals were acting in course and scope of

3   employment by CITY; and that the "illegal actions are part of a pattern and practice of

4   the Santa Rosa Police Department". (*Monell v. New York Department of Social Services* 436

5   U.S. 658 (1978))

6        Defendants filed a Notice of Removal on August 26, 2009.

7        Defendants separately allege via the Answer on file that the officers deny the

8   allegations that they acted unreasonably to detain and use force;  and that if the court

9   concludes that an officer used excessive force, that the officer is entitled to the

10  affirmative defense of qualified immunity.   The City denies that City maintained an

11  offensive policy, custom or practice, or that the City ratified or condoned unlawful

12  conduct. (Exhibit "A" to the Declaration of John J. Fritsch: Defendants' Answer to

13  Complaint)

14       Plaintiff RUIZ stipulated to the dismissals of ADRIA COOPER; MARLEE

15  WELLINGTON; BRENT JOLIFF; TIMOTHY GILLETTE; former Chief of Police ED

16  FLINT; and Sgt. RICH CELLI.

17                       **STATEMENT OF FACTS**

18       Plaintiff RUIZ, then age 32, began his day on May 5, 2008, Cinco de Mayo, at his

19  mother Mary Ray's house at 2474 Big Oak Dr., Santa Rosa, California.   Plaintiff RUIZ

20  then visited his grandmother about a mile and a half down the road at about 1:00 p.m.

21  and then he had lunch at about 2:00 p.m.   He then went to Macquino Andrade's house

22  in the neighborhood of Steele Lane and Marlow to drink beer. (Exhibit "B" to the

23  Declaration of John J. Fritsch: Deposition Transcript of Albert Thomas Ruiz III 37-9:40-2)

24       Before his encounter with Santa Rosa Police Department officers, plaintiff RUIZ

25  had had about five 12 ounce Modelo beers. (DT of RUIZ 24-5:21)

26       Plaintiff RUIZ left Andrade's house on his bicycle to get more Modelo beer from

27  the 7-Eleven store on West Steele Lane (DT of Ruiz 41-20:42-19) West Steele Lane is a

28  two lane road with bike lanes, and an additional turn lane at the intersection with Apple

1   Valley Lane. (Ex. "C" to the Declaration of John J. Fritsch: Deposition Transcript of

2   Chris Smotherman13-19:15-23 and Ex. "B"-aerial image of location) The lighting

3   conditions were fine (DT of Ruiz 42-23:43-10) Plaintiff RUIZ purchased a six pack of

4   Modelo at the 7-Eleven, and he began to ride westbound back to Andrade's house on

5   West Steele Lane with a bag containing a six pack of Modelo beer in one hand, an iPod

6   in the other hand, and no hands on the bicycle. Just after crossing the intersection with

7   Apple Valley Lane, plaintiff RUIZ lost control of his bicycle and crashed, breaking three

8   of the Modelo bottles. Plaintiff RUIZ abandoned the three unbroken bottles, and

9   returned to the 7-Eleven, purchased another six pack of Modelo, and began to ride back

10  to Andrade's house whereupon he "wrecked in the same exact location twice." Plaintiff

11  RUIZ does not know the fate of the bottles. (DT of RUIZ 43-17:48-13)

12      After the second crash, plaintiff RUIZ was so angry he wanted to encourage

13  some form of physical altercation with someone. A tree stake was supporting a CITY

14  tree nearby, and plaintiff RUIZ broke it off near ground level. (DT of RUIZ 48-11:23; Ex.

15  "B" to RUIZ Deposition: images of circled broken tree stake) He stood in the middle of

16  street swinging the tree stake, and began yelling curses directed at cars and people (DT

17  of RUIZ 49-16: 50-25)

18  Sgt. Rich Celli

19      Concurrently, Sgt. Rich Celli was working as a patrol supervisor in a marked

20  Santa Rosa Police Department patrol car and in full uniform, and proceeding eastbound

21  on West Steele Lane. (Ex. "D" to the Declaration of Ryan Hepp: Incident/Investigation

22  Report 08-0007012) Sgt. Celli observed plaintiff RUIZ stagger in the westbound lane;

23  grab the tree stake; and begin swinging the stake at passing vehicles. Sgt. Celli exited

24  his car, approached RUIZ and ordered him to submit to arrest (vandalism and obvious

25  intoxication) RUIZ stated "I'm not doing nothing, what are you gonna do?" Sgt Celli

26  repeated the order. RUIZ again refused. Sgt. Celli deployed an X26 taser in dart probe

27  mode: the dart probes struck plaintiff RUIZ in his right breast and right lower abdomen

28  (DT of RUIZ 66-15:68-15; DT of RUIZ: Ex."A" lower image depicting plaintiff RUIZ

1   post-arrest showing dart probes in right breast and lower abdomen and upper image

2   depicting bag with beer bottles, planting strip and remains of broken stake in ground).

3        Plaintiff RUIZ fell to the ground.  Sgt. Celli ordered RUIZ to submit to arrest and

4   remain prone.  After the taser pulse stopped, plaintiff RUIZ began to try to get to his

5   feet, and Sgt. Celli energized the taser again.   Plaintiff RUIZ was handcuffed, and

6   arrested for violations of California Penal Code §§ 148(a)1 (resisting arrest); 594(b)(4)

7   (vandalism); 647(f) (public intoxication); and 3056 (parole violation).

8   Officer HEPP

9        Officer HEPP arrived on scene and observed plaintiff RUIZ in handcuffs, and

10  that he was verbally aggressive and yelling vulgarities (HEPP Supplemental Report

11  attached to Incident/Investigation Report 08-0007012).  Plaintiff RUIZ was placed in the

12  back of a patrol car, and then taken out for images to be taken of him.  (DT of RUIZ 62-

13  17:64-21)  After that, Officers HEPP and Wellington escorted plaintiff RUIZ toward

14  Wellington's patrol car in double rear wrist locks to be taken to Sonoma County

15  Detention Center.   (HEPP Supplemental Report attached to Incident/Investigation

16  Report 08-0007012)

17       At the right rear door of Officer Wellington's car, plaintiff RUIZ said ""I want to

18  know what I'm under arrest for," what my charges are."  (DT of RUIZ 64-25:65-18)

19  Plaintiff RUIZ testified that Officer HEPP then said "Get in the car" and that plaintiff

20  RUIZ responded ""Look, I have a right to know what I'm being arrested for.""  (DT of

21  RUIZ 65-19:21)    Officer HEPP reported that Officer HEPP opened the rear right door of

22  the patrol car and told plaintiff Ruiz to sit down.  Plaintiff Ruiz looked at Officer HEPP

23  with a blank stare.  Office HEPP told Officer Ruiz a second time "Sit down!"  Plaintiff

24  Ruiz flexed his muscles in his arms, and locked out his knees as he wedged his body,

25  neck and shoulder against the door frame of the vehicle refusing to enter the back seat.

26  (HEPP Supplemental Report attached to Incident/Investigation Report 08-0007012)

27       Describing physical resistance, plaintiff RUIZ testified as follows:

28       Q.     Going back to being at that right-rear door of the police cruiser, Officer

1      Wellington's present, Officer Hepp is present.  Did you wedge your body
       against the door frame to prevent them from putting you in the car?

2

3      A.    I can't recall.  I don't really understand the question "wedge" Like brace
             myself?

4      Q.    Yeah.  Did you brace yourself in a way that would make it difficult for
             them to put you in the back of the car?

5

6      A.    That's quite possible. (DT of RUIZ 95-5:15)

7          Officer HEPP reported that he placed his hand on plaintiff RUIZ's left shoulder

8   and tried to push down as he yelled "Sit down, now!" and plaintiff RUIZ yelled "Make

9   me".  (HEPP Supplemental Report attached to Incident/Investigation Report 08-

10  0007012)

11         Describing the exchange, plaintiff RUIZ testified as follows:

12     Q.    Okay.  Before—after you arrived at the open car door and before you sat in
             the car, did anyone put any weight on your shoulders with their hands

13           and try to get you–push you down into the car?

14     A.    That might have been—that could have happened, yeah, like, "Get in the
             car"--

15     Q.    (Witness nods head)

16
       A.    -–on the shoulder, you know, "Get in the car."  But I saw saying, "I want to
17           know what my charges are.  What am I under arrest for? I have a right to
             know that,"  (DT of RUIZ 80-8:19)

18
       Q.    Okay.  When–and I'm not sure if you have a specific recall or not.   But
19           when force was applied to your shoulder to push you down, did you
             respond to that in any way?  Did you resist it?

20
       A.    Well, yeah.  I was still standing.  How can you make someone sit with one
21           hand?  I mean, really.  So,--

22     Q.    Was the hand put on your shoulder and you being pushed down into the
             car, was that occurring at the time that you were asking about what the
23           charges were?

24     A.    Yes.    (DT of RUIZ 81-16-8:82-2)

25
       Q.    Did Officer Hepp say to you, Sit down in the car, and did you reply, Make
26           me?

27     A.    I might have said "You're going to have to make me, and I have a right–I
             wanted my questions answered is why"
28

1  Q.    Understood

2  A.    And–and I might have said something to that degree, yes." (DT of RUIZ
       95-18:25)

3

4  Officer HEPP reported that plaintiff RUIZ then turned toward HEPP in an

5  aggressive pose, and then looked directly at Officer HEPP and pursed his lips together

6  as if about to spit on Officer HEPP.   (HEPP Supplemental Report attached to

7  Incident/Investigation Report 08-0007012).

8  Describing his movements, plaintiff RUIZ testified as follows:

9  Q.    Okay.  They–Officer Hepp ordered you to get in the car; am I right?

10  A.    Yes.

11  Q.    Did you get in the car in response to that order?

12  A.    No.

13  Q.    Was there a reason why?

14  A.    'Cause I wanted some answers.

15  Q.    Okay.  Did you–Officer Hepp felt that you were–strike that.  Did you at
       any time purse your lips as if you were going to spit?

16  A.    No.

17  Q.    Did you turn to towards Officer Hepp?

18  A.    To make eye contact, yes.

19  Q.    Okay.  That occurred as you were being put in the back of the car?

20  A.    Yes. (DT of RUIZ 76-6:23)

21

22  Based on plaintiff RUIZ's uncooperative behavior and expressed aggression,

23  Officer HEPP believed that plaintiff RUIZ was about to assault Officer HEPP with a

24  shoulder or head butt.  Officer HEPP immediately recognized the threat and initiated a

25  single open hand palm heel strike to plaintiff RUIZ's midsection (stomach area) with his

26  right hand.  The strike did not slow plaintiff Ruiz as he continued turning toward

27  Officer HEPP and yelled.  The single heel strike to his torso did not seem to affect

28  plaintiff Ruiz who looked directly at Officer HEPP and pursed his lips together as if

1   about to spit on Officer HEPP.  Officer HEPP quickly struck plaintiff Ruiz in the face

2   two times with a palm heel strike.  Plaintiff Ruiz immediately stepped back, fell down

3   into the rear seat of the patrol car, and was secured in the back seat.   (HEPP

4   Supplemental Report attached to Incident/Investigation Report 08-0007012)

5          After the encounter, plaintiff RUIZ had a bloody nose and lip.  By the time he

6   arrived at Sonoma County Detention Center after the encounter, his blood had

7   coagulated and he was no longer bleeding.  **He never obtained any health care for a**

8   **bloody nose and lip.**  He was not in pain. (Ex. "A": DT of RUIZ 25-24:27-22; 28-22: 30-6)

9          After the encounter, Officer Wellington drove plaintiff RUIZ to the Sonoma

10   County Detention Center, a five to ten minute trip.   During the ride, plaintiff RUIZ

11   asked Officer Wellington if he could get her number and give her a personal call

12   sometime (Ex. "A": DT of RUIZ 84-3:86-6)

13                                   **LEGAL ANALYSIS**

14   **Legal Standard for Summary Judgment**

15          Summary judgment is appropriate where there is no genuine dispute as to

16   material facts and the movant is entitled to judgment as a matter of law".  Fed.R.Civ.P.

17   56(c).  *Toscano v. Profe'l Golfers Ass'n* 258 F3d 978, 982 (9th Cir. 2001) A dispute as to a

18   material fact is genuine if there is sufficient evidence for a reasonable jury to return a

19   verdict for the non-moving party.  *Long v. County of Los Angeles,* 442 F.3d. 1178, 1185 (9th

20   Cir. 2006).  A party seeking summary judgment bears the initial burden of informing the

21   court of the basis for its motion and of identifying those portions of the pleadings and

22   discovery responses that demonstrate the absence of a genuine issue of material fact.

23   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

24          The burden of demonstrating the absence of a genuine issue of material fact lies

25   with the moving party, and for this purpose, the material lodged by the moving party

26   must be viewed in the light most favorable to the non-moving party. *Adickes v. S .H.*

27   *Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 5098, 26 L.Ed.2d 142 (1970); *Martinez v. City of*

28   *Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998).

1    A material issue of fact is one that affects the outcome of the litigation and

2  requires a trial to resolve different versions of the truth.  *Lynn v. Sheet Metal Workers Int'l*

3  *Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th

4  Cir. 1982).

5    If the moving party presents evidence that would call for judgment as a matter of

6  law at trial if left uncontroverted, then the respondent must show by specific facts, the

7  existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250,

8  106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  "There is no issue for trial unless there is sufficient

9  evidence favoring the non-moving party for a jury to return a verdict for that party.  If

10 the evidence is merely colorable, or is not significantly probative, summary judgment

11 may be granted."  Id., at 249-50 (citations omitted).  "A mere scintilla of evidence will

12 not do, for a jury is permitted to draw only those inferences of which the  evidence is

13 reasonably susceptible; it may not resort to speculation."  *British Airways Board v. Boeing*

14 *Co.*, 585 F.2d 946, 952 (9th Cir. 1978); see also, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,

15 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

16   If the factual context makes the non-moving party's claim of a disputed fact

17 implausible, then that party must come forward with more persuasive evidence than

18 otherwise would be necessary to show there is a genuine issue for trial.  *Blue Ridge*

19 *Insurance Co. v. Stanewich,* 142 F.3d 1145, 1149 (9th Cir. 1998).  When the moving part has

20 carried its burden under Rule 56(c), its opponent must do more than simply show that

21 there is some metaphysical doubt as to the material facts...Where the record taken as a

22 whole could not lead a rational trier of fact to find for the nonmoving party, there is no

23 "genuine issue for trial.'  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

24 585-587 (1986).

25   Once the moving party meets the requirement of Rule 56 by either showing that

26 no genuine issue of material fact remains or that there is an absence of evidence to

27 support the non-moving party's case, the burden then shifts to the party resisting the

28 motion, who "must set forth specific facts showing that there is a genuine issue for

1    trial." *Anderson, supra*, 477 U.S. 242 at p. 250. It is not enough for the party opposing a

2    properly supported motion for summary judgment to "rest on mere allegations or

3    denials of his pleadings." *Id.*, 91 L.Ed.2d, at 217.

**ISSUES**

**A.    OFFICER HEPP'S USE OF FORCE WAS OBJECTIVELY REASONABLE AND CONSISTENT WITH PROPER POLICE PROCEDURE**

7    An excessive force claim is analyzed under the Fourth Amendments "objective

8    reasonableness" standard. *Graham v. Conner*, 490 U.S. 386, 388 (1989). The inquiry

9    requires "attention to the facts and circumstances of each particular case including [1]

10   the severity of the crime at issue, [2] whether the suspect poses an immediate threat to

11   the safety of the officers or others, and [3] whether he is actively resisting arrest or

12   attempting to evade arrest by flight." *Id.* These facts should be considered in relation to

13   the amount of force used. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).

14   The "escalation of force" spectrum employed by Officer HEPP spanned from the

15   level of uniform presence, verbal tactics, firm grip/gesture (shoulder pressure) to the

16   intermediate level of physical force. Officer HEPP continued with verbal commands

17   throughout the encounter, and plaintiff RUIZ was instructed to enter the car repeatedly

18   although plaintiff RUIZ admittedly ignored the instructions and continued to confront

19   Officer HEPP.[1] Each escalation of use of force was in response to resistance and non-

20   compliance by plaintiff RUIZ, **and** the use of force was intended to achieve a lawful goal

21   of compliance and arrest. (Declaration of John Fritsch Ex. "E": Joe Callanan Report:

22   Paragraphs 8.06 through 8.09)

---

24   [1] It should be noted that plaintiff RUIZ is very familiar with the criminal justice system having

25   served time in prison from February 2004 through August 8, 2007 for charges arising out of striking a pedestrian while operating a motor vehicle, and by reason of his admitted membership in the Norteños

26   gang. These facts bear on the issue of whether plaintiff RUIZ reasonably expected Officer HEPP to have information about charges when RUIZ was arrested by Sgt. Celli, not Officer HEPP, and Officers HEPP

27   and Wellington were clearly assigned to transport plaintiff RUIZ, nothing more. A reasonable inference is that plaintiff RUIZ did not reasonably expect Officer HEPP to have that information, and the actual

28   reason for plaintiff RUIZ to attempt to question Officer HEPP was to continue his resistance and obstruction albeit in a different form than swinging tree stakes, yelling and seeking physical combat.

1     It should be noted that the "objectively reasonable" standard does **not** implicate

2  whether the officer had less intrusive alternatives available. The rationale that supports

3  this rule is practical and understandable:

4     "Requiring officers to find and choose the least intrusive alternative would
       require them to exercise superhuman judgment. In the heat of the battle
5     with lives potentially in the balance, an officer would not be able to rely on
       training and common sense to decide what would best accomplish his
6     mission. Instead, he would need to ascertain the *least* intrusive alternative
       (*an inherently subjective determination*) and choose that option, and that
7     option only. Imposing such a requirement would inevitably induce
       tentativeness by officers and thus deter police from protecting the public
8     and themselves. It would also entangle the courts in endless second
       guessing of police decisions made under stress and subject to the
9     exigencies of the moment." (*Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.
       1994).

10

11     In the event, there is no evidence that another, less intrusive alternative was

12  available; would have been effective; and/or would have not increased the risks of

13  injury to plaintiff RUIZ.

14     It is anticipated that in an attempt to raise a triable issue, plaintiff RUIZ will

15  characterize the force used as closed fisted and multiple blows. While the amount of

16  force transmitted by closed or empty handed physical force can vary widely, the

17  resultant injury furnishes the most compelling evidence about the amount of force

18  actually transmitted. In this case, the evidence of injury is that plaintiff RUIZ

19  experienced a very minor injury: assuming that the injury was not caused by his two

20  bicycle crashes or while falling after being tasered, he apparently experienced bleeding

21  that coagulated during the short five-to-ten minute ride to the Sonoma County

22  Detention Center. He did not experience pain. He did not need or receive health care

23  for the injury at any time, and there is no evidence from the Sonoma County Detention

24  Center supporting the conclusion that plaintiff RUIZ made any complaint or otherwise

25  needed medical attention upon his intake at that facility. And, although an imperfect

26  gauge, it is a measure of the comparatively minor amount of force experienced by

27  plaintiff RUIZ that the injury did not prevent him from seeking personal information

28  from Officer Wellington during the ride to the Detention Center for the purpose of

1    asking her out.

2        The reasonable inference is that the physical force applied by Officer HEPP

3    functioned as intended to distract plaintiff RUIZ from resistance and obstruction with

4    minimal injury, and that plaintiff RUIZ suffered a very minor, temporary, self-healing

5    injury.   This outcome was consistent with good, proper police practices, and the injury

6    is not consistent with an application of excessive force.

7        Under the totality of circumstances, and especially given plaintiff RUIZ's level of

8    intoxication, resistance and combativeness, Officer HEPP's use of force was objectively

9    reasonable and consistent with proper procedure. (Declaration of John Fritsch: Ex. "E"

10   Callanan Report)

11   **B.    IF THE COURT CONCLUDES THAT A CONSTITUTIONAL VIOLATION
           OCCURRED, OFFICER HEPP IS ENTITLED TO APPLICATION OF**
12   **      QUALIFIED IMMUNITY AND DISMISSAL OF THE COMPLAINT**

13       When a constitutional violation occurs, as alleged in plaintiff's complaint, "law

14   enforcement officers nonetheless are entitled to qualified immunity if they acted

15   reasonably under the circumstances." *KRL v. Estate of Moore*, 512 F.3d 1184, 1189 (9th Cir.

16   2008) (citing *Wilson v. Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).

17       A police officer enjoys qualified immunity "unless the official's conduct violate a

18   clearly established constitutional right." *Pearson v. Callanan*, –U.S.–, 129 S. Ct. 808, 816

19   (2009).   The concern of qualified immunity is to acknowledge that reasonable mistakes

20   can be made as to the legal constraints on particular police conduct.   It is sometimes

21   difficult for an officer to determine how relevant legal doctrine....will apply to the

22   factual situation the office confronts. *Saucier v. Katz,* 533 U.S. 194, 205, 121 S.Ct. 2151,

23   150 L.Ed.2d 272 (2001).   Defendants will not be immune if, on an objective basis, it is

24   obvious that no reasonably competent officer would have concluded that a warrant

25   should issue; but if officers of reasonable competence could disagree on this issue,

26   immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).   The defense

27   of qualified immunity "shields government officials performing discretionary functions

28   from liability for civil damages 'insofar as their conduct does not violate clearly

1  established statutory or constitutional rights of which a reasonable person would have

2  known'".  *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994) citing *Harlow v. Fitzgerald*, 457

3  U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  Because qualified immunity is "an

4  immunity from suit rather than a mere defense to liability . . . , it is effectively lost if a

5  case is erroneously permitted to go to trial."  *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105

6  S.Ct. 2806, 86 L.Ed.2d 411 (1985).

7          In excessive force cases, the inquiry remains whether "under the circumstances a

8  reasonable office would have had fair notice that the force employed was unlawful, and

9  whether any mistake to the contrary would have been unreasonable"  *Boyd v. Benton*

10 *County* 374 F.3d 773, 781 (9th Cir.2004).  A reasonable officer under the same

11 circumstances would have believed his conduct to be lawful since the actions taken

12 were not "plainly incompetent" and were not a product of a knowing violation of the

13 law.  Officer HEPP contends that even if the amount of force was not objectively

14 reasonable, any mistake as to the amount of such force that could be used under the

15 particular circumstances was a reasonable mistake, and that Officer HEPP is entitled to

16 qualified immunity.

17      **1.    City Did Not Maintain a Policy, Custom or Practice, or Ratify or**
        **Condone Violative Conduct, Encouraging Excessive Force**
18

19         Municipal liability in section 1983 actions is "only appropriate where a plaintiff

20 has shown that a constitutional deprivation was directly caused by a municipal policy."

21 *Nadell v. Las Vegas Metro. Police Dep't* 268 F.3d 924, 929 (9th Cir. 2001).  Four conditions

22 must be satisfied:(1) that plaintiff possessed a constitutional right of which he was

23 deprived;(2) that the municipality had a policy; (3) that this policy "amounts to

24 deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is

25 the "moving force behind the constitutional violation."  *Van Ort v. Estate of Stanewich*, 92

26 F.3d 831, 835 (9th Cir. 1996).

27         In the instant case, both defendants contend that plaintiff RUIZ did not

28 experience a violation of his constitutional rights.  Moreover, as to CITY OF SANTA

---

Notice of Motion and Motion for Summary Judgment, Case No. CV 09-3952                    Page 12

1   ROSA,  Officer HEPP was properly trained as a patrol officer. (Ex. "F" to Declaration of

2   Ryan Hepp: Basic and Intermediate Certificates of Completion of Peace Officer

3   Standards and Training dated October 1,2007 CSR 000013-000016)   Santa Rosa Police

4   Department regularly evaluated the performance of Officer HEPP, and concluded that

5   Officer HEPP performed to a high standard (Ex. "G" to Declaration of Ryan Hepp:

6   Police Office Performance Evaluations CSR 000060-000098.   Santa Rosa Police

7   Department maintained an modern use-of-force policy.  (Declaration of Ryan Hepp Ex.

8   "H": General Order 01-02 - Use of Force)   It should be noted that Officer HEPP's report

9   of use of force was reviewed by a supervisor pursuant to departmental policy as well.

10          There no evidence that implementation of any policies or practice caused a

11   constitutional violation nor can it be said that implementation of the policies amounted

12   to "deliberate indifference".

13          **2.      Neither CITY nor Officer HEPP violated the Bane Act.**

14          The Tom Bane Civil Rights Act establishes a private right of action against a

15   person who interferes by threats, intimidation, or coercion with the plaintiffs "exercise

16   or enjoyment" of federal or state rights.  (Cal. Civ.Code § 52.1) In the instant case, the

17   use of force was not excessive and was proper.  Since there is no violation of federal

18   constitutional rights, and there is no claim different from the allegation of violation of

19   federal constitutional right, the Bane Act claim must fail.

20          **3.      Officer HEPP Did Not Commit Common Law Battery.**

21          In considering a state law battery claim against a police officer based on excessive

22   force in the course of an arrest, investigatory stop, or other seizure of a free citizen, the

23   question is whether the officer's actions are objectively reasonable in light of the facts

24   and circumstances confronting him, without regard to his underlying intent or

25   motivation. To prevail in a state law battery claim against a police officer or in a federal

26   claim of excessive use of force, a plaintiff must prove that the peace officer's use of force

27   was unreasonable. *Brown v. Ransweiler* (2009) 171 Cal.App.4th 516.  The reasonableness

28   standard of the Fourth Amendment to the United States Constitution, as applied to a

1  state law battery claim against a police officer based on excessive force in the course of

2  an arrest, investigatory stop, or other seizure of a free citizen, is highly deferential to the

3  police officer's need to protect himself and others.   Because federal civil rights claims of

4  excessive use of force are the federal counterpart to state battery and wrongful death

5  claims against police officers, federal cases are instructive in considering such battery

6  and wrongful death claims.

7        In the instant case, plaintiff cannot show that Officer HEPP's use of force was

8  unreasonable and excessive, and the state law claim must fail.

9        **4.      There is no Triable Issue of Fact Material to plaintiff's violation of the
          Convention Against Torture Count**

10

11       The Convention Against Torture ("CAT") prohibits signatory states, including

12  the United States, from returning a person to a country where there is substantial

13  evidence that he will be tortured. See *Al-Saher v. I.N.S.*, 268 F.3d 1143, 1146 (9th

14  Cir.2001).  To be eligible for CAT relief, plaintiff must show that it is more likely than

15  not that he would be tortured if he is returned to another state.  *Kamalthas v. I.N.S.*, 251

16  F.3d 1279, 1284 (9th Cir. 2001).

17       The implementing regulations for the Convention Against Torture define torture

18  as:

19       [A]ny act by which severe pain or suffering, whether physical or mental, is
         intentionally inflicted on a person for such purposes as ... punishing him
20       or her for an act he or she or a third person has committed or is suspected
         of having committed, or intimidating or coercing him or her or a third
21       person, or for any reason based on discrimination of any kind, when such
         pain or suffering is inflicted by or at the instigation of or with the consent
22       or acquiescence of a public official or other person acting in an official
         capacity.  8 C.F.R. 208.18(a)(1).

23

24       Under the totality of circumstances, and especially given plaintiff RUIZ's level of

25  intoxication, resistance and combativeness, Officer HEPP's use of force was objectively

26  reasonable and consistent with proper procedure.   There is no triable issue of material

27  fact that plaintiff RUIZ would be entitled to CAT relief.

28  //

1

**CONCLUSION**

2    In closing, CITY OF SANTA ROSA and its Santa Rosa Police Department did not

3 act with deliberate indifference and its policies are sound policies not causally related to

4 plaintiff RUIZ's claims. CITY OF SANTA ROSA respectfully requests that the court

5 grants its motion.

6    Officer HEPP acted objectively reasonably at all times and his use-of-force was

7 reasonable. Officer HEPP respectfully requests that the court grant his motion on the

8 grounds that plaintiff RUIZ's constitutional rights were respected, not violated. In the

9 alternative, Officer HEPP respectfully requests that the court conclude that he is entitled

10 to qualified immunity and dismiss the case.

11

12                                    OFFICE OF THE CITY ATTORNEY

13

14 Dated: May 5, 2010

                                      /s/
                                      _____
                                      John J. Fritsch
15                                    Assistant City Attorney
                                      Attorney for Defendants
16                                    CITY OF SANTA ROSA; SRPD Officer RYAN
                                      HEPP

17

18

19

20

21

22

23

24

25

26

27

28